7 N.Y.2d 249 (1959)
In the Matter of Realty Agency, Inc., Appellant,
v.
Robert C. Weaver, as State Rent Administrator, Respondent, and Tenants of Premises 419 East 57th Street, New York, N. Y., Intervenors-Respondents.
Court of Appeals of the State of New York.
Argued October 14, 1959.
Decided December 30, 1959.
Robert S. Fougner for appellant.
Jacob B. Ward and Harold Zucker for respondent.
Irving Perl for intervenors-respondents.
Chief Judge CONWAY and Judges FULD, VAN VOORHIS and BURKE concur with Judge FROESSEL; Judge DESMOND dissents in an opinion in which Judge DYE concurs.
*251 FROESSEL, J.
The issue presented on this appeal is whether the State Rent Administrator properly rejected sales price as a valuation base in a rent adjustment proceeding instituted by petitioner, as authorized by section 4 (subd. 4, par. [a]) of the State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1957, ch. 755).[1]
*252 The discretionary power heretofore accorded the Rent Administrator to reject or accept a bona fide sales price as a valuation base in rent adjustment proceedings is now restricted by statute. The pre-1957 subdivision 4 (par. [a], cl. [1]) of section 4 of the Rent Control Law established assessed valuation as the primary valuation base (see § 4, subd. 4, par. [a], cl. [1], as amd. by L. 1955, ch. 685). However, the Administrator was permitted to ("may") determine that the valuation of the property was other than the assessed valuation or equalized valuation in three prescribed situations  one of them being where a "bona fide sale of the property" had taken place (Ibid., see Matter of Abrams v. McGoldrick, 282 App. Div. 192; Matter of 340 E. 57th St. Corp. v. Weaver, 3 Misc 2d 356, 359 [collecting cases], affd. 2 A D 2d 678, affd. 2 N Y 2d 799).
Subdivision 4 (par. [a], cl. [1]) in its present form expressly mandates the use of sale price if the sale took place after March 15, 1953, as opposed to assessed valuation, for, as the Legislative Commission pointed out, bona fide sales prices are "a more accurate reflection of value in fair return applications" (N. Y. Legis. Annual, 1957, p. 264; Matter of Ackerman v. Weaver, 6 N Y 2d 283, 287). As a consequence, the Administrator may no longer freely utilize one or the other at his discretion, but must use the price of a recent sale, when available, unless specifically excepted by the statute. These exceptions are set forth in the statute by way of four qualifications which preclude the use of sales price. The sale must be bona fide as a result of an arm's length transaction; on normal financing terms; at a readily ascertainable price and unaffected by special circumstances.
In the instant case, the Rent Administrator concluded that the 1957 sale of the subject property to petitioner's principal, Edgerly Realty Corporation, failed to meet two of the statutory qualifications: it was "not an arm's length transaction and [was] affected by special circumstances".[2] The sole basis for that conclusion, as the Administrator's published opinion indicates, was the fact that Messrs. Scheuer and Hurd, the stockholders *253 of Edgerly, had a 35% interest in the operating profits and sales proceeds of the subject property.
Petitioner explained this 35% interest as follows: In 1936 the subject property was owned by Sutton Place Apartments, Inc., which had floated first mortgage bonds secured by the property. J. Scheuer & Company held $156,000 in face amount of these bonds and sold them in February, 1936 to Welz & Zerweck, Inc.,  the corporation which sold the instant property to Edgerly. The bonds were sold for $80,019.60, and on condition that "upon the sale, exchange or other final disposition of said bonds [J. Scheuer & Co. shall] receive 35% of the net realized profit". Welz & Zerweck subsequently acquired control of the property, and at the closing of its sale to Edgerly satisfied its obligation under the mortgage-bond sale contract by paying said 35% to Scheuer and Hurd, who apparently succeeded to J. Scheuer & Company's interest. The purchase price paid by Edgerly for the property was $1,151,920.[3] At the closing, Scheuer and Hurd received from Welz & Zerweck $319,634.34 "as the share of profits on the sale of the premises" and $6,838.10 as the "share in the profits in the operation of the premises for the year ended December 31, 1956".
In addition to the foregoing explanation of the 35% interest, petitioner proffered evidence which indicated a 6 to 1 sales-price-to-rent ratio for the subject property; that an $815,000 first mortgage was negotiated for the property at about the time of the instant sale  a significant factor since lending institutions are limited in their mortgage loans to two thirds of a property's value; and that an offer was made by an outside group to purchase the subject property at $1,235,000, slightly more than the purchaser paid here.
On the face of this record, there is no substantial evidence to support the Administrator's finding that the consummated bargain was other than an arm's length transaction. The evidence does not disclose that petitioner's principal and Welz & Zerweck negotiated the transaction other than as adversary parties, each standing upon their respective rights and neither under the other's control. There is nothing to indicate that the seller sold for less than the fair value of the property or that the *254 buyer paid more. Even as to the profits on the sale, the buyer and seller were adversaries  the one a debtor, the other a creditor.
The same must be said as to the Administrator's finding of "special circumstances". That term is not defined by statute except as it is illustrated, namely, "such as a forced sale, exchange of property, package deal, wash sale or sale to cooperative". Manifestly, the instant transaction comes within none of these illustrations, nor within the ambit of the term "special circumstances", the scope of which may be measured under the doctrine of ejusdem generis. The illustrations set forth in the statute are of situations where the price yielded a distorted reflection of value. There is not the slightest evidence of such distortion here. In Matter of Ackerman v. Weaver (supra) we held that the presence of an "internal arrangement" between the lessor and lessee  the existence of a cancelable lease  did not "specially circumstance" the sale (6 N Y 2d 287). By the same token, in the instant case, the 1936 agreement between the vendor and the vendee, which was not proven to have affected the sale or the sale price as a reflector of value, does not in and of itself "specially circumstance" the sale.
Certain aspects of the instant sale and its prior history, upon which no findings appear in the record, remain unexplained. These matters should have been developed by the Rent Administrator in his "de novo" consideration and review. It may well be that, after a hearing and proper inquiry is had with respect to these matters and the landlord's proffered evidence, the latter's claims may be successfully challenged. A rejection of sales price may then be proper. On the face of the instant record, however, as we have indicated, the rejection of sales price was arbitrary.
Respondent Rent Administrator contends, in substance, that the rent adjustment provisions of the statute were designed to obviate involved valuation hearings. It is true that the Legislature may facilitate and expedite rent adjustment proceedings by the standards provided in subdivision 4 (par. [a], cl. [1]), but this does not mean that the Administrator may disregard all relevant and nonrefuted objective criteria, and decline to hold a hearing and make inquiry when warranted by the facts. *255 We do not suggest that the subject property need be appraised in the manner followed in condemnation or tax proceedings. We simply state that, in this case, failure of the Administrator to receive and challenge appellant's proffered evidence and to make appropriate inquiry as to the instant sale at a hearing before him, leaves his findings unsupported by substantial evidence (State Residential Rent Law, § 8, subd. 1; State Rent and Eviction Regulations, § 98, subds. [2], [6]). To hold otherwise, we would be sanctioning an arbitrary restriction on the use of the Legislature's mandate of sales price (see Matter of Florell Equities v. Weaver, 2 N Y 2d 982; Matter of 340 E. 57th St. Corp. v. Weaver, 2 N Y 2d 799, supra).
Accordingly, the order should be reversed, without costs, the determination of the State Rent Administrator annulled, and the matter remanded to the Rent Administrator for further proceedings not inconsistent with this opinion.
DESMOND, J. (dissenting).
I dissent and vote to affirm. I see no illegality in the Rent Commission's refusal to use the sale price as a valuation base, nor do I see any necessity for a further hearing. Section 4 (subd. 4, par. [a], cl. [1]) of the State Residential Rent Law requires that in computing a 6% return the valuation used shall be the adjusted assessed valuation unless there has been a bona fide sale "as the result of a transaction at arms' length * * * unaffected by special circumstances". Thus the use of the sales price is itself an exception to the requirement of the use of the adjusted assessed value and the exception applies only when the sale is an arm's length transaction unaccompanied by special circumstances. There certainly were special circumstances here. It could not be said either that this was an arm's length transaction or that it was unaffected by special circumstances. The owners of the purchasing corporation had a 35% interest in the profit on the sale in which they themselves were the purchasers. This was a sufficient basis for holding that this was not the kind of arm's length market place sale that the Legislature had in mind. The commission was, therefore, justified in refusing to use the sale price as a base.
Order reversed, etc.
NOTES
[1] The relevant portion of the Rent Law reads: "Provision shall be made pursuant to regulations prescribed by the commission, for individual adjustment of maximum rents where (1) the rental income from a property yields a net annual return of less than six per centum of the valuation of the property. Such valuation shall be the current assessed valuation * * * properly adjusted * * * except where there has been a bona fide sale of the property within the period between March fifteenth, nineteen hundred fifty-three, and the time of filing of the application, as the result of a transaction at arms' length, on normal financing terms at a readily ascertainable price and unaffected by special circumstances such as a forced sale, exchange of property, package deal, wash sale or sale to cooperative" (§ 4, subd. 4, par. [a]; emphasis supplied). (The State Rent and Eviction Regulations, § 33, subd. 5, so far as pertinent, restate the above-quoted provision of the statute.)
[2] The Administrator also found that the instant sale was a "package deal" since an adjoining light protector was sold together with the subject property. This additional ground was abandoned on appeal.
[3] This is the allocated purchase price, obtained after deducting the value of the adjoining light protector from the $1,220,000 actually paid.